IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VINCENT O. EZEIRUAKU, *doing business as* SABA PRODUCTS,<br><br>    Plaintiff,<br><br>   v.<br><br>DAN BULL, *INDIVIDUALLY AND POLICE, AS AN OFFICER OF THE LONDON POLICE*, et al.,<br><br>    Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 14-2567 (JBS/KMW)<br><br><br>**OPINION** |

APPEARANCES:

Vincent O. Ezeiruaku, Pro Se
900 Monet Court
Williamstown, N.J. 08094

Aileen F. Droughton, Esq.
Marta N. Kozlowska, Esq.
TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP
322 Highway 35 South, First Floor
Red Bank, N.J. 07701
    Attorney for Defendants

**SIMANDLE, Chief Judge:**

## I.   INTRODUCTION

In this action concerning the police seizure of $80,000 in undisclosed U.S. currency in London's Heathrow International Airport, Defendants the "London Police"[1] and two of its officers,

---

[1] Though Plaintiff's Complaint names "'the London Police,'" Defendant asserts that no such entity exists. (Defs.' Br. at n. 2 (citation omitted).) Rather, Defendants assert that "the Commissioner of the Police of the Metropolis" constitutes the proper defendant. (Id.) Federal Rule of Civil Procedure 17 generally requires an action to "be prosecuted in the name of the real party in interest." FED. R. CIV. P. 17(a)(1). Here, however, the parties do not dispute the nature of the real party

Dan Bull and David March (hereinafter, "Defendants"), move to dismiss pro se Plaintiff Vincent O. Ezeiruaku's (hereinafter, "Plaintiff") Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (3) and (5).  [Docket Item 5.]

In his Complaint, Plaintiff generally asserts that Defendants seized his currency in violation of his "federally guaranteed constitutional" rights.  [Docket Item 1.]  Defendants move to dismiss Plaintiff's Complaint principally on the basis that the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1603, and 1605 (hereinafter, the "FSIA"), provides Defendants, arms of a foreign sovereign, with immunity from this litigation. Moreover, because acts of foreign nationals form the fabric of Plaintiff's Complaint, Defendants challenge whether the Court possesses personal jurisdiction over Defendants and, relatedly, question whether this District constitutes a proper venue in accordance with 28 U.S.C. § 1391.  Lastly, Defendants dispute the efficacy of Plaintiff's service of his Complaint by mail, and argue that effective service in this instance requires compliance with the *Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents*, Feb. 10, 1969, 20 U.S.T. 361.

Plaintiff, relying principally upon the liberal construction afforded pro se pleadings, argues that the nature
___
in interest, and the misidentification does not alter the disposition of the pending motion.

of this action falls within the commercial activity, expropriation, and tortious activity exceptions to the jurisdictional immunity of a foreign state under 28 U.S.C. § 1605(a).

The principal issue before the Court is whether foreign immunity under the FSIA insulates Defendants from this litigation. For the reasons explained below, the Court finds the Defendants immune, and therefore lacks subject matter jurisdiction over Plaintiff's claims.  The Court will accordingly grant Defendants' motion to dismiss on that basis.

## II.  BACKGROUND

### A. Factual Background

The facts set forth below are those alleged in Plaintiff's Complaint, which the Court accepts as true for the purposes of the pending motion.[2]  Plaintiff alleges that, while traveling through London's International Airport on January 18, 2013, Defendants, officers of the London "Police" force, "discovered" in Plaintiff's possession and "immediately confiscated" $80,000 in U.S. currency.  (Compl. at ¶¶ 1-2.)  Defendants purportedly failed to communicate the basis for such seizure—whether at the time of the incident or thereafter—but nonetheless retained the funds for in excess of fourteen months.  (Id. at ¶¶ 3-7.) Defendant David Marsh, however, ultimately found "no link"

---

[2] Plaintiff filed the initial Complaint in this action on April 22, 2014.  [Docket Item 1.]

between the funds and any illegal activities, and therefore represented an intention to return such funds with interest. (Id. at ¶ 7.) Despite that representation, the sums remitted by Defendants allegedly amounted to "less than the original $80,000." (Id. at ¶ 9.)

Plaintiff asserts in his Complaint that this fourteen month seizure "violated his federally guaranteed constitutional rights of due process," "right to property," and "civil rights," because such seizure occurred without reasonable suspicion that the seized currency bore a relationship with illegal activity. (Id. at ¶¶ 9-11.) Plaintiff therefore seeks monetary damages for the various business losses allegedly derived from "the deprivation" of Plaintiff's currency. (Id. at ¶ 9.)

### B. Parties' Arguments

Defendants, relying upon the various provisions of Rule 12(b), move for dismissal of Plaintiff's Complaint on the following grounds: lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, ineffective service of process, and failure to state a claim. (See generally Defs.' Br.) Defendants principally argue, however, that the Court lacks subject matter jurisdiction over this action because the FSIA confers immunity upon Defendants, particularly because this action concerns a seizure that occurred in Defendants' "official capacity as instrumentalities of the United Kingdom, a foreign

4

sovereign[.]" (Defs.' Br. at 3-4, 9-10 (citation omitted).) Moreover, because the entire fabric of this litigation concerns events in London, Defendants assert that this action and specifically their conduct lacks any appreciable nexus with New Jersey. (Id. at 5-8.) Defendants accordingly argue that Plaintiff's Complaint must be dismissed for lack of personal jurisdiction and/or for improper venue, because "no appropriate venue exists" for Plaintiff's claims. (Id. at 8.) Lastly, Defendants dispute whether Plaintiff successfully effectuated service of his Complaint. (Id. at 11-12.) Defendants specifically argue that Plaintiff's service by mail to Defendants' "place of work" fails to constitute effective service. (Id.) Rather, given the international scope of this litigation, Defendants assert that effective service requires compliance with the Hague Convention, not service upon Defendants by mail. (Id. at 12.)

Plaintiff generally counters that the nature the purportedly tortious conduct asserted in Plaintiff's Complaint "strips" Defendants "of any immunity under the law."[3] (Pl.'s

---

[3] On July 21, 2014, Plaintiff filed, without leave of Court, a sur-reply to Defendants' motion. [Docket Item 8.] See also L. Civ. R. 7.1(d)(6) ("No sur-replies are permitted without permission of the Judge or Magistrate Judge to whom the case is assigned."). Notwithstanding the procedurally improper nature of Plaintiff's filing, Defendants have filed no opposition, and the Court will therefore consider the submission. The Court, however, readily dispenses with the arguments set forth in Plaintiff's sur-reply, particularly to the extent Plaintiff

Opp'n at 2.)  In so asserting, Plaintiff asserts that sovereign immunity exceptions, set forth in 28 U.S.C. § 1605(a)(2), (3), and (5) collectively, or in the alternative, provide authority for the Court to exercise subject matter jurisdiction over this action.[4]  (Id.; see also Pl.'s Sur-reply at 2.)  Plaintiff further argues that Defendants' engaged in targeted contact with this District (and more generally the United States) by returning the seized currency to Plaintiff in New Jersey.  (Id. at 3.)  Lastly, Plaintiff contends that he properly effectuated service of his Complaint in accordance with 28 U.S.C. § 1608(b)(3)(B), and accordingly asserts that Defendants' motion should be denied in its entirety.

---

relies upon 28 U.S.C. § 1332 as a basis to exercise "*foreign diversity jurisdiction*" over this action.  (Pl.'s Sur-reply at 2 (emphasis in original).)  28 U.S.C. § 1332, however, fails to provide a jurisdictional basis relevant to this action, which concerns indisputably instrumentalities of a foreign state.  Indeed, Plaintiff concedes that Defendants qualify as an "'agency or instrumentalit[ies]'" of a foreign state in accordance with the definition set forth in the FSIA, 28 U.S.C. § 1603(b).  (Pl.'s Sur-reply at 2.)  The FSIA therefore "provides the sole basis for obtaining jurisdiction" over the foreign state Defendants in this Court.  Argentine Rep. v. Amerada Hess Shipping Corp., 488 U.S. 428, 439 (1989).
[4] Plaintiff alternatively argues, in reliance on the Alien Tort Claims Act, 28 U.S.C. § 1350, that the purportedly tortious nature of the alleged conduct precludes Defendants' assertion of immunity.  (Pl.'s Opp'n at 2.)  The Alien Tort Claims Act provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States," Sosa v. Alvarez-Machain, 542 U.S. 692 (2004) (emphasis added), and has no application to Plaintiff, "a naturalized citizen of the United States[.]"  (Pl.'s Sur-reply at 3.)

**III.  STANDARD OF REVIEW**

Because federal courts are courts of limited jurisdiction, the party seeking to invoke the court's jurisdiction bears the burden of proving the existence of subject matter jurisdiction. See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).  "Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it."  Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010). Notwithstanding this sua sponte obligation, Federal Rule of Civil Procedure 12(b)(1) enables a party, as here, to move to dismiss a complaint for lack of subject matter jurisdiction.

Under Rule 12(b)(1), the court's jurisdiction may be challenged either facially (based on the legal sufficiency of the claim) or factually (based on the sufficiency of a jurisdictional fact).  Gould Elecs. v. U.S., 220 F.3d 169, 178 (3d Cir. 2000).  "The substantive distinction between a facial attack and a factual attack is that in a facial attack the defendant contests the sufficiency of the complaint, while a factual attack challenges the existence in fact of federal subject matter jurisdiction."  LaLoup v. U.S., ___ F. Supp. 2d ____, No. 13-7124, 2014 WL 3361804, at *3 (E.D. Pa. July 10, 2014).  In considering a facial challenge to subject matter jurisdiction under Rule 12(b)(1), as here, the Court considers "whether the allegations on the face of the complaint, taken as

7

true, allege facts sufficient to invoke the jurisdiction of the district court."[5] Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 188 (3d Cir. 2006). The action must accordingly be dismissed if the allegations on the face of the complaint, accepted as true, fail to "allege facts sufficient to invoke the jurisdiction of the district court." Licata v. U.S.P.S., 33 F.3d 259, 206 (3d Cir. 1994).

## IV. DISCUSSION

### A. Foreign Sovereign Immunities Act

Foreign sovereign immunity has long been recognized as a bar as to suits against foreign sovereigns in United States federal and state courts. Verlinden B.V. v. Cent. Bank of Nigeria, 461 U.S. 480, 486 (1983). Indeed, the FSIA provides the exclusive source of subject matter jurisdiction over claims in United States courts against foreign states and their agencies or instrumentalities. See Rep. of Argentina v. Weltover, 504 U.S. 607, 610-11 (1992). The FSIA specifically provides

> The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under

---

[5] Under a factual attack, by contrast, the Court's inquiry is not cabined to allegations in the complaint. Rather, the Court may "consider affidavits, depositions, and testimony to resolve factual issues bearing on jurisdiction." Gotha v. U.S., 115 F.3d 176, 179 (3d Cir. 1997); see also Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891-92 (3d Cir. 1977).

>sections 1605–1607 of this title or under any applicable international agreement.

28 U.S.C. § 1330. A foreign state, its agents, and its instrumentalities therefore possess presumptive immunity from suits in federal courts, absent a demonstration by the plaintiff that the claim falls within a statutory exception to immunity.[6] See 28 U.S.C. § 1604 (generally noting that, "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided" in sections 1605 and 1607 to the FSIA).

In Federal Insurance Company v. Richard I. Rubin & Company, Inc., 12 F.3d 1270 (3d Cir. 1993), and in reliance on the FSIA's legislative history, the Court of Appeals adopted a burden-shifting analysis to guide a court's jurisdictional inquiry under the FSIA. In accordance with this framework, once the defendant makes the prima facie case that the defendant qualifies as a foreign state under the FSIA (or where, as here, it is readily apparent from the pleadings and undisputed that the defendants constitute qualifying agents and/or instrumentalities of a foreign state), the burden shifts to the plaintiff to produce sufficient evidence demonstrating the

---

[6] The FSIA generally defines a "'foreign state'" to include "a political subdivision of a foreign state or an agency or instrumentality of a foreign state[.]"  28 U.S.C. § 1603(a). Here, as stated above, the parties do not dispute that Defendants constitute agents and/or an instrumentality of a foreign state, as defined by the FSIA. (See Defs.' Br. at 3-4; Pl.'s Sur-reply at 2-3.)

9

application of one of the statutory exceptions to immunity. Id. at 1285. "If the plaintiff satisfies his burden of production, 'jurisdiction exists unless the defendant demonstrates by a preponderance of the evidence that the claimed exception does not apply.'" Abdulla v. Embassy of Iraq at Wash., D.C., No. 12-2590, 2013 WL 4787225, at *2 (E.D. Pa. Sept. 9, 2013) (quoting Peterson v. Islamic Rep. of Iran, 627 F.3d 1117, 1125 (9th Cir. 2010)).

In opposition to the pending motion, Plaintiff raises three FSIA exceptions as a basis to exercise subject matter jurisdiction over this litigation. (See generally Pl.'s Opp'n at 2; Pl.'s Sur-reply at 2.) Plaintiff specifically relies upon the commercial activity, expropriation, and tortious activity exceptions set forth in 28 U.S.C. § 1605(a)(2), (3), and (5). The Court therefore turns to whether these exceptions confer jurisdiction in this instance.

1. **The Commercial Activity Exception Does Not Apply**

The commercial activity exception, set forth in Section 1605(a)(2) of the FSIA, provides that

> A foreign state shall not be immune from the jurisdiction of courts of the United States ... in any case—in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).  The FSIA defines the term "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act," but requires such activity to have a "<u>substantial</u> contact" with the United States.  28 U.S.C. § 1603(d) & (e) (emphasis added).

The commercial activity exception accordingly entails a two-step analysis.  The initial inquiry concerns whether "a sufficient jurisdictional nexus" exists between the foreign state's alleged commercial activity and the United States.  <u>Federal Ins. Co.</u>, 12 F.3d at 1286.  Assuming the requisite jurisdictional nexus, the inquiry then turns to whether a sufficient "substantive connection" exists between the foreign state's alleged commercial activity and the United States.  <u>Id.</u>  In other words, the basis for litigation under this exception must concern a foreign state's <u>direct</u> participation in commercial activity in the United States, or a foreign state's engagement in a commercial activity with a <u>significant</u> and <u>substantial</u> connection to the United States.  <u>Id.</u> (emphases added).  Consequently, "'commercial within the meaning of the FSIA'" connotes a foreign state acting "not as a regulator of a market, but in the manner of a private player within" such market.  <u>Weltover, Inc.</u>, 504 U.S. at 614 (citation omitted).

In relying upon this exception, Plaintiff alleges that Defendants' seizure of Plaintiff's currency enabled Defendants

11

to profit from the interest accrued during their retention of Plaintiff's funds. (Pl.'s Sur-reply at 2-3.) Plaintiff therefore argues that this alleged profit constitutes commercial activity with "a direct effect in the United States," because Defendants' seizure purportedly rendered Plaintiff "unable to continue his business as usual [] in the United States." (Id. at 3; see also Compl. at ¶ 9.) The activities identified by Plaintiff, however, even accepted as true, do not identify activities commercial in nature or in purpose. See LaLoup, 2014 WL 3361804, *19 (finding that (1) establishing and maintaining consulates, (2) promoting business interests through economic and commercial offices, and (3) sponsoring tourism through tourist offices failed to constitute commercial activity under the FSIA); Richardson v. Att'y Gen. of the B.V.I., No. 2008-144, 2013 WL 4494975, at * 4 (D.V.I. Aug. 20, 2013) (finding that the "alleged negligent arrest of a vessel and its passengers" did not qualify as commercial activity). Rather, in alleging that Defendants engaged in commercial activity in the disputed seizure, Plaintiff relies upon quintessentially sovereign acts, namely, London's policing of its international airport (see Compl. at ¶¶ 1-3), and not conduct of a nature that a private party would ordinarily undertake for profit. See Cmty. Fin. Grp., Inc. v. Rep. of Kenya, 663 F.3d 977, 981 (8th Cir. 2011) (finding the decisions concerning whether to "seize property

12

during criminal investigations" governmental, "rather than commercial activities"). Indeed, "a foreign state's exercise of the power of its police has long been understood ... as peculiarly sovereign in nature." Saudi Arabia v. Nelson, 507 U.S. 439, 361 (1993) (citations omitted).

Moreover, the disputed acts in this instance have far too trivial and unsubstantiated an impact on the United States to satisfy the direct effect and substantiality requirements of the exception. See Weltover, Inc., 504 U.S. at 618 (finding that jurisdiction under the commercial activity exception "may not be predicated on purely trivial effects in the United States"). Indeed, in arguing that Defendants' conduct impacted the United States, Plaintiff relies upon nebulous and speculative assertions of lost profits, but concedes that the underlying conduct bears no transactional relationship to the United States. (See Compl. at ¶ 9.) These allegations, accordingly, fail to suffice. 28 U.S.C. § 1603(d) & (e) (defining the "commercial activity" exception). As a result, the alleged acts fall beyond the scope of the commercial activity exception to sovereign immunity.

**2. The Expropriation Exception Does Not Apply**

The expropriation exception, set forth in 28 U.S.C. § 1605(a)(3) of the FSIA, provides that

> A foreign state shall not be immune from the
> jurisdiction of courts of the United States ... in any

> case—in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States....

28 U.S.C. § 1605(a)(3). Thus, in order to establish jurisdiction pursuant to this exception, a plaintiff must show that: "(1) rights in property are in issue; (2) that the property was 'taken'; (3) that the taking was in violation of international law; and (4) that one of the two nexus requirements is satisfied." <u>Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi</u>, 215 F.3d 247, 251 (2d Cir. 2000) (citations omitted); <u>Abelesz v. Magyar Nemzeti Bank</u>, 692 F.3d 661, 671 (7th Cir. 2012) (citing <u>Zappia</u> for the four elements relevant to the FSIA's expropriation exception). Here, the Court need not belabor the first three elements of the exception, because Plaintiff patently fails to satiate the nexus requirement.

Indeed, the FSIA provides two paths to demonstrate the requisite nexus, neither of which Plaintiff demonstrates in this instance. Specifically, Plaintiff could first show that "property or any property exchanged for such property is present in the United States in connection with a commercial activity

carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(3). In the alternative, Plaintiff could show that "property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States." 28 U.S.C. § 1605(a)(3). Here, however, and as stated above, Plaintiff has failed to sufficiently allege that Defendants engaged in any commercial activity in the United States. Indeed, Plaintiff has alleged no nexus, whether factual or legal, between Defendants' conduct and the United States, beyond the mere remittance (by mail) of Plaintiff's seized currency. (See Compl. at ¶ 8.) Moreover, Plaintiff does not allege that Defendants possessed his currency in the United States, nor that Defendants have retained or exchanged the purportedly expropriated property. See Cmty. Fin. Grp., Inc., 663 F.3d at 981 (8th Cir. 2011) (finding the expropriation exception inapplicable where plaintiff "failed to establish that the property [was] present in the United States or that the expropriating defendants engage in commercial activity in the United States"). Rather, Plaintiff's Complaint squarely states that Defendants returned his property upon conclusion of their official investigation, and prior to the inception of this litigation. (See id. at ¶¶ 7-9.) As a

15

result, the alleged acts fall beyond the scope of the expropriation exception to sovereign immunity.

### 3. The Tortious Activity Exception Does Not Apply

The tortious activity exception, set forth in 28 U.S.C. § 1605(a)(5) of the FSIA, provides that

> A foreign state shall not be immune from the jurisdiction of courts of the United States ... in any case— in which money damages are sought against a foreign state for <u>personal injury or death</u>, or <u>damage to or loss of property</u>, <u>occurring in the United States</u> and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment....

28 U.S.C. 1605(a)(5) (emphases added). The limited scope of this exception covers "only torts occurring within the territorial jurisdiction of the United States," regardless of whether the alleged tort "may have had effects in the United States." <u>Argentine Rep.</u>, 488 U.S. at 441. Even if Plaintiff's allegations, accepted as true, could plausibly be construed to allege that Defendants engaged in tortious conduct, Plaintiff has not alleged, nor could he allege, that such conduct occurred "within the territorial jurisdiction of the United States[.]" <u>Id.</u> Rather, Plaintiff's Complaint clearly reflects that acts within the territorial jurisdiction of the United Kingdom form the core predicate of this action.[7] (<u>See</u> Compl. at ¶¶ 1-3.) The

---

[7] Having concluded that the Court lacks subject matter jurisdiction over Plaintiff's Complaint, the Court need not address Defendants' alternative arguments concerning personal

16

tortious activity exception, accordingly, has no application to this litigation.

## V. CONCLUSION

In sum, the Court concludes that Plaintiff's allegations fail to fall within the relied-upon exception to the FSIA. Having so concluded, the Court lacks subject matter jurisdiction over this action, and will accordingly grant Defendants' motion to dismiss on that basis.  The accompanying Order will be entered.

| | |
|---|---|
| **November 3, 2014** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | Chief U.S. District Judge |

---

jurisdiction, venue, and/or the sufficiency of service of process.  (See generally Defs.' Br.)  However, even if the Court found sovereign immunity did not apply—which it does—it is dubious that the Court would ever have personal jurisdiction over Defendants, particularly given their asserted lack of contacts with this District (see Lockeyear Aff. at ¶¶ 5-9), and because, aside from Plaintiff's citizenship, this action bears no appreciable connection with the United States.

```
        IN THE UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| VINCENT O. EZEIRUAKU, *doing business as* SABA PRODUCTS,<br><br>    Plaintiff,<br><br>  v.<br><br>DAN BULL, *INDIVIDUALLY AND POLICE, AS AN OFFICER OF THE LONDON POLICE*, et al.,<br><br>    Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 14-2567 (JBS/KMW)<br><br><br>**ORDER** |

This matter comes before the Court by way of Defendants' motion to dismiss pro se Plaintiff Vincent O. Ezeiruaku's (hereinafter, "Plaintiff") Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (3) and (5) [Docket Item 5]; and the Court having considered the parties' submissions; and for the reasons explained in the Opinion of today's date; and for good cause shown;

IT IS this  **3rd**  day of **November**, **2014,** hereby

ORDERED that Defendants' motion to dismiss [Docket Item 5] shall be, and hereby is, **GRANTED** in part; and it is further

ORDERED that Plaintiff's Complaint shall be, and hereby is, **DISMISSED** for lack of subject matter jurisdiction; and it is further

ORDERED that the Clerk of Court shall **CLOSE** this case.

                             **s/ Jerome B. Simandle**
                             JEROME B. SIMANDLE
                             Chief U.S. District Judge